UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SIOUX BREEDERS, L.L.C.,

       Plaintiff,

v.                                      Case Number 07-14823-BC
                                       Honorable Thomas L. Ludington
GEOSTAR FINANCIAL SERVICES
CORPORATION,

       Defendant.
_____/

## ORDER CANCELING HEARING AND DIRECTING THE PARTIES TO FILE SUPPLEMENTAL BRIEFING

On June 23, 2008, Plaintiff filed an amended complaint [Dkt. # 11] after satisfying the Court that diversity jurisdiction exists. In its amended complaint, Plaintiff alleges one breach of contract count and alternative counts of promissory estoppel and unjust enrichment. Plaintiff's claims arise out of a written agreement entered into by itself and Defendant in June 2005, in which Defendant purchased certain working interests from Plaintiff in exchange for certain stock shares, subject to an option.

On October 6, 2008, Plaintiff filed a motion for summary judgment [Dkt. # 17], which is now before the Court. Also pending before the Court, is Plaintiff's motion for a protective order staying discovery pending the outcome of its motion for summary judgment [Dkt. # 23], filed on December 16, 2008. While the discovery motion is not scheduled for hearing, the Court will address it along with the motion for summary judgment, as the issues presented in both motions are intertwined. With respect to both motions, additional legal authority is necessary, and the Court will direct the parties to submit supplemental briefing on the issues as outlined below.

I

The facts in this case are largely undisputed. Plaintiff Sioux Breeders ("Plaintiff" or "Seller") is a single member limited liability company with William Pederson as its sole member. Defendant GeoStar Financial Services Corp. ("Defendant," "GeoStar Financial," or "the Company") is a subsidiary of GeoStar Corp. On June 26, 2005, the parties entered into a written agreement in which Defendant purchased "all of [Seller's] oil, gas and coalbed methane interests from the 2004 Powder River Basin Program, owned by the Seller" in exchange for 322,176 common shares of Gastar Exploration, Ltd., subject to a $5.00 per-share put option. A section of the agreement entitled "Representations, Warranties and Covenants of the Seller," contains the terms of the option, which are as follows:

> If, as of January 1, 2007, Seller still owns all shares referenced herein, being 322,176 shares, then, and only then, shall Seller have the right to request and enforce the purchase of the shares by the Company during that month of January 2007, with a per share price of $5.00 per share, for a total payment of $1,610,880. Seller shall notify the company in writing during this period, being the month of January 2007, in order to enforce the purchase.

Purchase Agreement Sec. A, ¶ 2. That section also states:

> The Seller invested Two Million Three Hundred Sixty Thousand Seven Hundred Ninety-Five Dollars ($2,360,795.00) in January 2004 with an affiliate of the Company to purchase oil and gas working interests in the Powder River Basin 2004 Oil and Gas Working Interest Drilling Program.

*Id.* Sec. A, ¶ 1. Another section, entitled, "Miscellaneous," indicates that the parties agreed that:

> This Agreement constitutes the entire agreement between the Seller and the Company regarding the offer and sale of the working interest, which Seller is selling, and may be amended only by a writing executed by all parties.

*Id.* Sec. C.

It is undisputed that Defendant received the working interests from Plaintiff and that Plaintiff subsequently exercised the option according to the terms of the agreement. It is also undisputed that

Defendant has made no payments to Plaintiff for the Gastar shares. What Defendant disputes is that the consideration related to the "underlying transaction" was adequate. Thus, Defendant argues that there is not a valid contract.

In 2002, Plaintiff invested approximately $3.1 million in ClassicStar's Mare Lease Program. Like Defendant, ClassicStar is a subsidiary of GeoStar Corp. Through the mare lease program, investors acquired interests in mares that would be bred in the following year, with foals resulting in the year after that. At the end of the lease term, the investors would take ownership of the foals and would no longer have an interest in the mares. The investors would then be free to sell the foals as weanlings or two-year olds, or to keep the foals. Plaintiff, through various means, provided half of the $3.1 million balance in cash and financed the remaining balance through Key Bank in Utah. Defendant believes that the loan was subsequently assigned to ClassicStar, and that Plaintiff has not yet repaid the loan; Defendant is pursuing discovery related to the loan.

Then, in January 2004, Plaintiff sold three performance horses to First Source Powder River Basin, Inc. ("First Source"), another subsidiary of GeoStar Corp., in exchange for working interests in the amount of $2,360,795. In April 2005, in a separate arrangement, Plaintiff entered into a purchase agreement with ClassicStar in which ClassicStar paid $750,000 for three thoroughbred horses. Thus, according to Defendant, the June 2005 agreement, which is the agreement at issue in this case, lacks proper consideration as a result of the "overvaluation" of the horses used by Plaintiff to purchase the working interests from First Source.

II

Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

III

According to Plaintiff, to prevail on its breach of contract claim, Plaintiff must prove the following: (1) there was a valid and binding contract between the parties, (2) Plaintiff fully performed its obligations pursuant to the contract, (3) Defendant breached the contract, and (4) Plaintiff suffered damages as a direct result of Defendant's breach. Thus, Plaintiff emphasizes that the terms of the June 2005 agreement between it and Defendant are unambiguous, that Defendant received the working interests from Plaintiff as consideration for the agreement, that Plaintiff received the requisite Gastar shares at that time, that Plaintiff exercised the option to require

Defendant to pay Plaintiff $5.00 a share for the Gastar shares in January 2007, that Plaintiff deposited the Gastar shares with an escrow agent, and finally, that Defendant has not paid Plaintiff any of the $1,610,880.00 that Plaintiff is owed under the terms of the option and agreement.

As stated above, Defendant does not dispute the basic facts emphasized by Plaintiff. However, Defendant contends that "the underlying transactions are riddled with problems and that these transactions lack proper consideration as a result of the overvaluation of the quarter horses used by [Plaintiff] to purchase working interests from First Source. . . ." Defendant contends that the horses that Plaintiff conveyed to First Source for the working interests could not have been valued at over $2.3 million because Plaintiff sold three horses to ClassicStar for $750,000 just three months later.

Additionally, Defendant contends that a recent deposition in the Multidistrict Litigation of *In Re ClassicStar Mare Lease Program*, MDL Docket No. 1877, 5:07-CV-00353-JMH (E.D. Ky) has confirmed that the value of the horses was significantly inflated and that investors were complicit in the inflation. The deposition of Shane Plummer, who apparently worked for Strategic Opportunity Solutions LLC, and provided recommended values of horses related to the ClassicStar Mare Lease Program, shows the following: Plummer valued a horse by looking at, inter alia, "a mare's pedigree, her earnings, her produce, what her mother had produced or sold or her sisters or lots of different things, and try to come up with a valuation based on what, in some day in the future, could one of her foals sell for." Plummer Dep. 97, Oct. 22, 2008. The value was not intended to be a "fair market price," but what it could sell for "if it had all the training put into it and it won all the money and all that kind of stuff. . . ." *Id.* Plummer affirmed that horses were valued "aggressively." *Id.* 280. Thus, Defendant contends that it did not receive full consideration from

Plaintiff under the June 2005 agreement with Plaintiff because the horses were knowingly overvalued by Plaintiff.

Defendant requests that, under Federal Rule of Civil Procedure 56(f), the Court deny Plaintiff's motion as premature, or reserve judgment until discovery has closed. Defendant states that Plaintiff's motion was filed at an early point and Defendant is still awaiting Plaintiff's responses to interrogatories and requests for production of documents. Defendant seeks information related to Plaintiff's purchase of the working interests and seeks time to depose Plaintiff to determine whether it had any knowledge that the values of the horses were inflated. Defendant believes that Plaintiff should have had knowledge of the actual values of the horses because Plaintiff likely took significant income tax deductions based on its lease agreements with ClassicStar. Defendant states that it may seek leave to file a supplemental response based on the discovery that it receives.

In reply, Plaintiff contends that Defendant cannot delay summary judgment when it lacks standing to challenge the agreement between Plaintiff and First Source, which is a separate, although affiliated, entity from Defendant. Plaintiff further contends that no discovery related to the agreement between Plaintiff and First Source could possibly create a genuine issue of material fact because the agreement is irrelevant to the June 2005 agreement at issue in this case. Thus, in addition to filing a reply, Plaintiff also filed a motion for a protective order staying discovery. In order to avoid Defendant receiving "a free pass to complete discovery without the Court ever ruling on whether its request for relief under Fed. R. Civ. P. 56(f) is warranted," Plaintiff filed this motion instead of responding to Defendant's discovery requests. Thus, while discovery closed on December 19, 2008, Defendant never received the discovery that it requested from Plaintiff.

For most purposes, the agreement between Plaintiff and First Source is irrelevant to the June

2005 agreement between Plaintiff and Defendant. However, under the June 2005 agreement, Plaintiff "represent[ed], warrant[ed] and covenant[ed]" to Defendant that it "invested Two Million Three Hundred Sixty Thousand Seven Hundred Ninety-Five Dollars ($2,360,795.00) in January 2004 with an affiliate of the Company to purchase oil and gas working interests in the Powder River Basin 2004 Oil and Gas Working Interest Drilling Program." Depending on how that provision of the agreement affects the agreement as a whole, Defendant's proposed discovery related to Plaintiff's actual investment could demonstrate that Plaintiff did not fulfill its obligations under the June 2005 agreement. Thus, Defendant's proposed discovery would be relevant to the issues in this case. In order to fully resolve the motions before the Court, the Court will direct the parties to provide supplemental briefing on this issue, including additional legal authority.

Accordingly, it is **ORDERED** that the hearing scheduled for January 28, 2009, is **CANCELED**.

It is further **ORDERED** that the parties are **DIRECTED** to file supplemental briefing on or before **February 9, 2009**.

                                                s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

Dated: January 26, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 26, 2009.

                                  s/Tracy A. Jacobs
                                  TRACY A. JACOBS